# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 13, 2022

Decided July 8, 2022

No. 20-3076

IN RE: SEALED CASE

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cr-00102-1)

*Christine Pembroke,* appointed by the court, argued the cause and filed the briefs for appellant.

*Tyler Anne Lee*, Attorney, U.S. Department of Justice, argued the cause for appellee. On the brief were *Katharine A. Wagner, Kaitlin J. Sahni*, and *David M. Lieberman,* Attorneys.

Before: SRINIVASAN, *Chief Judge*, TATEL[*], *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*: Appellant shipped a package containing chemicals used to manufacture fentanyl from China to Peru. The package landed in Memphis, Tennessee, on its

---

[*] Judge Tatel assumed senior status after this case was argued and before the date of this opinion.

way to Peru, but did not go through United States customs while on the ground in Memphis.

Appellant pleaded guilty to three counts relating to the importation of controlled substances and listed chemicals into the United States. He raises a single challenge on appeal: he contends that there is no importation into the United States when a package stops temporarily in United States territory en route to a foreign destination without ever clearing United States customs.

We dismiss the appeal. Appellant's plea agreement contains an appeal waiver that expressly bars him from raising the argument he now seeks to press on appeal. In the circumstances of this case, the appeal waiver is enforceable.

## I.

Around August 2017, appellant and an unidentified co-conspirator agreed to sell two fentanyl precursor chemicals to an undercover law enforcement officer posing as a fentanyl manufacturer. The officer asked appellant to ship the chemicals via FedEx to Peru from appellant's location in China. Appellant agreed to do so.

The package shipped on or about December 20, 2017. Around December 24, it arrived on a plane at a FedEx distribution center in Memphis, Tennessee. Roughly two days later, the package left Memphis and went to its final destination in Peru via Colombia. While on the ground in Memphis, the package never cleared U.S. customs. Appellant sent periodic tracking updates to the officer in the form of screenshots, including a screenshot sent on December 26 showing that the package was in Tennessee. Appellant also admits knowing that the package would stop in the United States en route to South America.

Based on that conduct, appellant was indicted on a number of counts, most of which involved the importation of controlled substances or listed chemicals into the United States. *See* 21 U.S.C. §§ 952, 959(a), 960. Appellant later began discussions with the government about a possible plea agreement.

Around the same time, his counsel alerted the district court that appellant might want to explore a legal issue before moving forward with a guilty plea. The issue, appellant's counsel said to the district court, was "whether a shipment passing through the United States with [a] final destination outside the United States" has been "imported into the United States" for purposes of the applicable statutes. The parties agreed that the issue was one of first impression in this circuit.

In August 2018, several months after appellant raised the importation issue, the government extended its first plea offer to him. Meanwhile, appellant contemplated filing a motion to dismiss the charges on the ground that the temporary stopover of the package in Memphis did not qualify as importation into the United States. The government cautioned that it would treat such a motion as a rejection of its outstanding plea offer. For several months, appellant wavered between accepting the plea offer and proceeding with the motion to dismiss.

The parties later compiled a list of relevant authorities on the importation question, presented it to the district court, and solicited the court's preliminary view. The court informed the parties that it believed the "crime of importation is complete when possession occurs anywhere within the U.S. territory, even . . . in a case like this where contraband does not clear customs." Transcript of Status Conference at 8 (Feb. 1, 2019), J.A. 124. The court explained that it thus would feel comfortable accepting appellant's guilty plea were he to so plead. The court clarified, though, that its views were only

"preliminary" and that it had not made a "final determination." *Id.* at 12, J.A. 128. The court advised appellant that he could still file a motion to dismiss and potentially persuade the court that its preliminary view was incorrect.

Appellant ultimately decided to accept the government's plea offer, under which he would plead guilty to three drug importation counts and the government would forgo pursuing three other counts. His plea agreement included an "Appeal Waiver." Plea Agreement ¶ 7, J.A. 257. Among other things, the waiver stated that "the Defendant waives any argument that . . . his admitted conduct does not fall within the scope of the statute" to "which [he] is pleading guilty." *Id.* At his plea hearing, the district court reviewed the terms of the appeal waiver with appellant, who confirmed that he understood them.

The district court sentenced appellant to 84 months of imprisonment and a 24-month term of supervised release, and he now appeals.

## II.

Appellant's sole contention on appeal is the same one he considered raising before the district court: that his conviction cannot be sustained under the relevant statutes because shipping chemicals intending or knowing they will stop in the United States on their way to South America does not constitute importation into the United States (or knowledge of such importation). That argument, however, falls squarely within the terms of the appeal waiver appellant executed as part of his plea agreement. In his "Appeal Waiver," appellant "waive[d] any argument that . . . his admitted conduct does not fall within the scope of the statute" to "which he is pleading guilty." Plea Agreement ¶ 7, J.A. 257. Appellant thereby expressly waived his ability to present the exact claim he now seeks to raise on appeal.

Appellant contends that, while his appeal waiver precludes him from disputing the nature of his admitted conduct, it does not bar him from making a purely interpretive argument about the scope of the applicable statutes. That reading contradicts the plain terms of appellant's appeal waiver. The waiver takes "his admitted conduct" as a given and bars any claim alleging that the conduct falls outside the relevant statutes. That is precisely what appellant seeks to do.

Appellant next argues that, even if his appeal waiver bars the argument he now seeks to make, we should decline to enforce the waiver for two reasons. His first argument begins with the recognition that an appeal waiver is generally enforceable only if voluntary and knowing. *See United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009). According to appellant, his waiver was not a "knowing" one because the district court misled him about the charges he faced by misinforming him that the package's stopover in Memphis qualified as an importation for purposes of the relevant statutes.

The district court, however, made clear that its view about the scope of the statutes was a "preliminary" one. Transcript of Status Conference at 12 (Feb. 1, 2019), J.A. 128. The court went on to remind appellant that his counsel could brief the issue and persuade the court that its initial view was mistaken. In that context, there is no basis for appellant's contention that the district court misled him about the reach of the statutes.

At any rate, we have explained that an appeal waiver generally meets the requirement that it be "knowing" when "the defendant is aware of and understands the risks involved" and "his choice is made with eyes open." *See Guillen*, 561 F.3d at 529–30 (citations and internal quotations omitted). Here, appellant does not—and could not—claim to have misunderstood the relevant risks: even assuming arguendo that

the district court's preliminary view about the meaning of "importation" was flawed, appellant understood that, by entering into the plea agreement and accepting the appeal waiver, he relinquished the opportunity to challenge the court's initial view in an appeal.

Appellant's second objection to enforcing the appeal waiver is that doing so would amount to a miscarriage of justice. *See id.* at 531. Holding appellant to the terms of his appeal waiver, however, would not work any miscarriage of justice.

Because appellant identified early on that he had questions about whether the circumstances of this case involved an "importation" into the United States, both he and the government were aware of the issue during the bulk of the proceedings in the district court. And the possibility that appellant would formally raise the claim informed the parties' negotiations and subsequent decisions. Soon after appellant indicated he might file a motion to dismiss, the government presented him with a choice. He could accept a plea offer pursuant to which the government would drop three of the counts against him; and by doing so, appellant would waive his ability to raise in an appeal his potential objection to the government's understanding of "importation" (along with various other possible claims). J.A. 205. Alternatively, appellant could file a motion to dismiss, knowing that, if he did so, the government might withdraw its plea offer.

Appellant considered both options. From the start, he did so with the advice of counsel. Eventually, he also obtained the district court's preliminary view on his contemplated motion. And at all times, both parties had every reason to understand that appellant was choosing not just whether to plead guilty,

but also whether to accede (or object) to the government's understanding of "importation."

In the end, appellant made the decision to forgo the uncertainty of filing a motion to dismiss and to instead accept the government's plea offer. The agreement he signed memorialized the benefits and costs of that decision. He obtained the benefit of the government's dropping three additional counts against him. In exchange, he waived his right to raise certain objections to his counts of conviction in any appeal, thereby securing a benefit for the government, too. *See United States v. Lee*, 888 F.3d 503, 506 (D.C. Cir. 2018). Appellant now seeks to avoid one of the known costs of his plea agreement by reviving the very claim he opted to relinquish. In these circumstances, enforcing his appeal waiver would not work any miscarriage of justice.

\* \* \* \* \*

For the foregoing reasons, we dismiss the appeal.

*So ordered.*